**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DOLLAR RENT A CAR SYSTEMS, INC.,
an Oklahoma corporation,

      Plaintiff-Counter-Defendant-
      Appellee,

    v.

P.R.P. ENTERPRISES, INC., a Florida
corporation; PEDRO R . P. DE MORAES,
an individual resident of Florida; RUBENS
P. TADDEI, an individual resident of
Florida; P.R.T. ENTERPRISES, INC., a
Virginia corporation; ROSANA TADDEI,
an individual resident of Florida,

      Defendants-Counter-Claimants-
      Appellants.

No. 06-5140

(N.D. Oklahoma)

(D.C. No. 01-CV-0698-P)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

this appeal. <u>See</u> Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

## I. Introduction

Plaintiff-Appellee Dollar Rent A Car Systems ("Dollar"), an Oklahoma corporation, sued Defendant-Appellant PRP Enterprises, Inc., a Florida corporation, and PRT Enterprises, Inc., a Virginia corporation, ("Franchisees") for declaratory judgment that Dollar was entitled to terminate its relationship with Franchisees and breach of contract arising from Franchisees' failure to make payments as required under its License and Master Lease Agreements with Dollar. Dollar also sued Franchisees' personal guarantors and owners, Pedro R.P. De Moraes, Rubens P. Taddei, and Rosana Taddei for breach of their Guarantee Agreements with Dollar. Franchisees counterclaimed, asserting Dollar had wrongfully terminated its contractual relationship with Franchisees. The district court, pursuant to its diversity jurisdiction under 28 U.S.C. § 1332(a)(1), held a bench trial, found in favor of Dollar on all of Dollar's claims, and awarded Dollar damages, litigation costs and expenses, and attorney's fees. Because it concluded Dollar was justified in terminating its contracts with Franchisees, the district court found against Franchisees on Franchisees' counterclaims.

Franchisees, along with Moraes and the Taddeis, appeal the district court's ruling. Franchisees assert the district court erroneously admitted testimony from Dollar's expert witness as to Franchisees' financial condition and the likelihood

of Franchisees' future profitability.  Franchisees also allege the district court erroneously concluded Dollar was justified in terminating its relationship with Franchisees and should have awarded consequential damages or lost profits to Franchisees for Dollar's wrongful termination of the contracts.

This court exercises jurisdiction pursuant to 28 U.S.C. § 1291.  After reviewing the record and the district court's extensive findings of fact and conclusions of law, this court **affirms** the district court's evidentiary ruling and legal conclusions regarding Franchisees' liability.

## II.    Background

PRP Enterprises is a closely held corporation owned entirely by Moraes. PRT Enterprises is a closely held corporation owned by Moraes and Rubens Taddei.  Both corporations were engaged in the rental car business under franchise agreements with Dollar.

PRP operated Dollar franchises in Pensacola, Florida, from 1991 to 2001 and in Mobile and Birmingham, Alabama, from 1999 to 2001.  PRT operated Dollar franchises in Norfolk, Virginia, from 1992 to 2001 and in Richmond, Virginia, from 1999 to 2001.  In each operational location, Franchisees had License Agreements with Dollar that obligated them to pay license fees, system fees, Dollar reservation system charges, and revenue management charges, and to reimburse Dollar for supplies and materials, travel agent commissions, frequent flier payments, customer adjustments, goodwill certificates, and intercity

payments.[1]  Franchisees also had Master Lease Agreements in each location, which allowed them to lease cars from Dollar's fleet of vehicles and obligated them to pay fleet-leasing fees, as well as finance charges and late charges on any unpaid fleet-leasing fees.  Moraes personally guaranteed PRP Enterprises' debts in collateral Guarantee Agreements.  Moraes and the Taddeis each personally guaranteed the debts of PRT Enterprises through collateral Guarantee Agreements.  All disputes under the agreements were to be governed by Oklahoma law.

The contracts between Franchisees and Dollar permitted Dollar to terminate the contracts under various conditions.  Pursuant to each Master Lease Agreement, Dollar was permitted to terminate the agreement immediately without notice in the "event of default," which was defined to include, among other things, (1) Franchisees' failure to pay in full any lease payments on the date the payments were due, (2) Franchisees' insolvency, or (3) Franchisees' breach of either the Master Lease Agreement itself or the License Agreement, or guarantors' breach of the Guarantee Agreement.  Upon the occurrence of a default, Dollar was permitted to enter Franchisees' property to repossess its vehicles.

---

[1]Because the License Agreements were entered into on different dates, the terms of the agreements vary slightly.  The Pensacola and Norfolk agreements contain the same terms, however, as do the Richmond and Alabama agreements.

Under the Pensacola and Norfolk License Agreements, Dollar had the ability to terminate the agreements for "good cause" upon the delivery of notice to Franchisees for, among other things, (1) the failure to cure a default under a collateral agreement, such as the Master Lease Agreement, (2) Franchisees' insolvency or inability to pay their debts as the debts came due, or (3) Franchisees' failure to comply with the terms of the License Agreement on three or more occasions within any twelve-month period, including the failure to pay license fees, advertising assessments, reservation fees, or other fees. Additionally, after giving written notice of monies due under the License or Master Lease Agreements or other collateral agreements, Dollar retained the right to terminate the License Agreements following the expiration of a three-day cure period.

In addition to including provisions substantially similar to those referenced above regarding contract termination following repeated failures to comply with the terms of the License Agreements and the failure to make payments owed within three days of receiving notice, the Richmond and Alabama License Agreements provided that the agreements could terminate automatically and without notice to Franchisees if Franchisees became insolvent or were unable to pay their debts as the debts became due. The Richmond and Alabama License Agreements further specified that any description of default in any notice Dollar provided to Franchisees did not preclude Dollar from articulating additional or

supplemental bases for default in any action, hearing, or suit relating to the agreement or the agreement's termination.

The events precipitating Dollar's termination of the License and Master Lease Agreements occurred in September 2001. It is undisputed that Franchisees failed to make a fleet payment of $273,570.25 it owed Dollar, which was due to Dollar on September 17, 2001. By September 18, 2001, the parties stipulated that Franchisees owed Dollar a total of $569,000, including the missed fleet payment. As a result of Franchisees' unpaid debts, Dollar notified Franchisees in writing on September 18, 2001, that the Master Lease Agreements would terminate on September 21 unless the missed fleet payment of $273,570.25 was paid in full by that time. The next day, however, before the expiration of the three-day cure period Dollar initially granted to Franchisees in its September 18 notice, Dollar notified Franchisees in writing that it was immediately terminating its Master Lease Agreements and its License Agreements with Franchisees. Following termination of the agreements, Dollar disconnected Franchisees from its central reservation center, began repossessing its fleet from Franchisees' locations, and drew on a $422,000 letter of credit held as security for Franchisees' obligations. On September 21, 2001, Dollar filed its breach of contract and declaratory judgment action in federal district court.

After a lengthy pre-trial period, the district court held a bench trial, which culminated on October 28, 2004. After requesting written closing arguments and

post-trial briefing on issues related to damages, the district court issued an extensive, forty-nine page memorandum detailing its findings of fact and conclusions of law. Revising a mathematical error in its damage calculation, the court issued an amended judgment.

Relying in significant part on the testimony of Moraes and the Vice President of Dollar's Licensee Division, Mario Nargi, the district court found Franchisees began encountering financial difficulties by the first quarter of 2001 and had previously missed payments to Dollar during the spring and summer of 2001. By September 2001, franchisees were also significantly behind in their payments to other creditors. Moraes admitted the amount of past-due debt exceeded the cash Franchisees had on hand. Dollar's expert testified to Franchisees' poor financial condition, including the precipitous increase in Franchisees' accounts payable between January 2001 and September 2001. Based on the expert's testimony, the court found that, by September 19, 2001, Franchisees were insolvent, did not have the ability to continue as a going concern, and were not able to pay their debts as the debts became due.

The court further found that, in a series of conversations between Franchisees and Dollar from September 17 through September 19, Dollar was informed about Franchisees' dire financial condition. In multiple telephone calls between Moraes and Dollar collectors on September 17, Moraes indicated Franchisees were unable to pay past due amounts or make their fleet payment.

On September 18, Franchisees' bookkeeper told a Dollar collector that Moraes had laid off Franchisees' entire accounting staff the previous day. On September 19, Moraes spoke with Dollar's Director of Credit and Collections, as well as with Nargi, and indicated Franchisees would be unable to pay their debt in full without receipt of a bank loan or Dollar's willingness to buy Franchisees' franchise locations. Also on September 19, Mr. Taddei called Nargi and indicated Franchisees would probably have to file for bankruptcy.

Applying these findings to the language of the License and Master Lease Agreements, the court concluded there were multiple grounds for Dollar's termination of Franchisees' contracts. The court determined Franchisees defaulted on their payment obligations under the Master Lease and guarantor defaulted on the Guarantee Agreements, permitting Dollar to immediately terminate the Master Lease Agreements. The court further concluded Franchisees' failure to pay amounts due under the License Agreements for several successive months in 2001 constituted material breach of the License Agreements and provided "good cause" for Dollar's termination upon notice to Franchisees. The court additionally determined from the testimony and documentary evidence that Dollar's knowledge of Franchisees' insolvency and inability to pay its debts constituted material breach and amounted to "good cause" permitting Dollar to terminate the Pensacola and Norfolk License Agreements upon notice and to automatically terminate the Richmond and Alabama License Agreements.

Finally, the court indicated Franchisees' failure to cure their nonpayment of amounts due under the Master Lease Agreements represented a default under collateral agreements with Dollar, which provided an additional ground for "good cause" termination upon notice to Franchisees pursuant to the License Agreements. Based on these determinations, the court concluded the notice of immediate termination that Dollar provided Franchisees on September 19 was valid and that Dollar was not obligated to honor its initial offer of a three-day cure period. The court found it significant that, after receiving Dollar's termination notices and a subsequent notice reaffirming the termination notices, Moraes never offered to make payments to Dollar.

Based on its conclusion that Dollar's termination of the License and Master Lease Agreements were permitted by the terms of the agreements, the court rejected Franchisees' breach of contract counterclaim. Citing well-established tenets of Oklahoma contract law, the court rejected Franchisees' assertion that the offer of a three-day cure was binding and could not be revoked. The court further concluded Franchisees' statements to Dollar on September 17 through September 19 regarding Franchisees' inability to pay amounts due was tantamount to a repudiation of its contracts with Dollar. Finally, the court asserted as an independent ground for Franchisees' inability to recover damages the provisions in the License and Master Lease Agreements in which Franchisees waived any right to recover lost profits or consequential damages. As to the limitation-on-

damages provisions in the agreements, the court concluded Franchisees failed to demonstrate these provisions were unconscionable.

## III.    Discussion

### A.    Admission of Expert Testimony Regarding Franchisees' Financial Condition

On appeal, as they did before the district court, Franchisees challenge the district court's decision to admit the testimony of Steven Wilsey, a certified public accountant with training in business appraisal and valuation. Franchisees contest Wilsey's expertise in the evaluation of rental car franchises. In particular, Franchisees argue Wilsey failed to apply the very accounting standards he testified were applicable to the evaluation of Franchisees' management plan, calling into question his testimony regarding the likelihood of Franchisees' future profitability.

This court reviews a district court's determination to admit evidence for an abuse of discretion. *Nat'l Envtl. Serv. Co. v. Ronan Eng'g Co.*, 256 F.3d 995, 1001 (10th Cir. 2001). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Boughton v. Cotter Corp.*, 65 F.3d 823, 832 (10th Cir. 1995) (quotation omitted). This court's review of the record indicates that Wilsey demonstrated appropriate credentials to permit the

district court to qualify him as an expert witness pursuant to Federal Rules of Evidence 702 and 703.

As to the methodology Wilsey used in evaluating Franchisees' future prospects for profitability and Wilsey's experience in conducting such evaluations, when the district court sits as fact-finder in a bench trial, the court has the right to evaluate for itself the credibility of the testifying witness. *See Duplan v. Harper*, 188 F.3d 1195, 1202–03 (10th Cir. 1999). The record here reveals extensive examination regarding Wilsey's assessments of Franchisees' finances and detailed cross-examination regarding both the limits of Wilsey's experience and the limits of the methodology he used in analyzing Franchisees' business. This comprehensive examination of the witness ensured the court was well aware of the strengths and weaknesses of Wilsey's expertise when determining how to weigh Wilsey's testimony. This court, therefore, concludes the admission of Wilsey's testimony and, more specifically, its consideration of Wilsey's testimony on the likelihood of Franchisees' future profitability was not an abuse of the district court's discretion.

**B.      Termination of License and Master Lease Agreements**

Franchisees' broader argument on appeal is that the district court erred in concluding Dollar was justified in terminating its License and Master Lease Agreements with Franchisees. Franchisees contest the district court's determination that Franchisees repudiated their agreements with Dollar by making

statements indicating their impending insolvency.  Franchisees also challenge the district court's conclusion that Dollar's September 18 offer of a three-day cure period was revocable and non-binding.  Nowhere, however, do Franchisees contest the district court's underlying factual findings regarding the financial condition of their business at the time Dollar terminated the License and Master Lease Agreements or the court's legal conclusion that Franchisees were, in several ways, in material breach of both the Master Lease and License Agreements at the time Dollar terminated the agreements.

When a litigant appeals from the judgment in a bench trial, the district court's factual findings are reviewed for clear error and its legal conclusions are reviewed *de novo*.  *Holdeman v. Devine*, 474 F.3d 770, 775 (10th Cir. 2007).  This court's review of the record provides assurance that the district court's findings of fact were not clearly erroneous.  Additionally, this court's review of the contract provisions and Oklahoma contract law demonstrates the correctness of the district court's legal conclusion regarding Dollar's right to terminate its License and Master Lease Agreements with Franchisees, the propriety of its conclusion regarding repudiation, and the appropriateness of its determination that the three-day cure offered by Dollar was not required under any of the agreements and was not supported by the consideration that would have been necessary to make the offer binding.  This court has nothing to add to the district court's thorough memorandum, which exhaustively details its factual findings and

provides ample support for its legal conclusions.  We therefore affirm the district

court's judgment for substantially the reasons articulated by the district court.[2]

**IV.   Conclusion**

For the reasons set forth above, the amended judgment of the district court

is **AFFIRMED.**

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[2]Because this court affirms the district court's determination that Dollar's termination of the License and Master Lease Agreements was not wrongful and that Franchisees are not entitled to damages, we need not reach Franchisees' argument that the district court erred in concluding the terms of the agreements barred Franchisees' claim for consequential damages or lost profits.